UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALBA RABADI, widow of JOHN RABADI, ) | NO. EDCV 03-774 MAN | |
| ) | | |
| Plaintiff, ) | | |
| ) | MEMORANDUM OPINION AND ORDER | |
| v. ) | | |
| ) | | |
| JO ANNE B. BARNHART, ) | | |
| Commissioner of the ) | | |
| Social Security Administration, ) | | |
| ) | | |
| Defendant. ) | | |
| _____) | | |

Plaintiff filed a Complaint on July 10, 2003, seeking review of the denial by the Social Security Commissioner ("Commissioner") of disability insurance benefits ("DIB") and supplemental security income ("SSI"). On October 2, 2003, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on July 1, 2004, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and either directing the payment of benefits or remanding the case to the Commissioner for a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for DIB and SSI on February 25, 1992. (Administrative Record ("A.R.") 169-72, 205-08.)  Plaintiff claimed to have been disabled since December 31, 1987, due to a back and neck injury and leg pain.  (A.R. 17, 169, 205, 405.)  His past relevant work experience was as a surgical attendant, shipping receiving clerk, metal parts inspector, and insurance salesperson.  (A.R. 18.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  On April 17, 1995, Plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Alan R. Demby ("ALJ").  (A.R. 28-86.)  In addition, Alva Rabadi, Plaintiff's wife, Dee Chapman, a vocational expert, and Dr. Glen Almquist, a medical expert, testified.  (*Id*.)  On December 26, 1995, the ALJ denied Plaintiff's claims, and the Appeals Council subsequently denied Plaintiff's request for review of that decision.  (A.R. 16-22, 6-7.)  Plaintiff then sought review of that decision in this Court.

On March 25, 1999, the United States District Judge Christina A. Snyder remanded this case for further administrative proceedings after adopting the Report and Recommendation of the undersigned United States Magistrate Judge (the "1999 Order").  (A.R. 539-54.)  The 1999 Order directed the ALJ to "make specific findings regarding his reasons for rejecting [Plaintiff's] allegations of debilitating pain."  (A.R. 550.)  The Court also denied Plaintiff's request to reopen his prior applications for disability benefits, but rejected Defendant's argument

that *res judicata* should be applied to bar Plaintiff from arguing that he was disabled prior to March 1990. (A.R. 544-46.) The Appeals Council remanded the case to the ALJ "for further proceedings consistent with the [1999 Order]" and to render a new decision. (A.R. 555-56.)

On remand of this case pursuant to the 1999 Order, the ALJ conducted a hearing on October 28, 1999, in which Plaintiff and Issa Rabadi, Plaintiff's brother, testified, and the ALJ also elicited testimony from Dee Chapman, a vocational expert. (A.R. 418-66.) The ALJ denied benefits in a March 22, 2000 written decision, and the Appeals Council subsequently denied Plaintiff's request for review of that decision. (A.R. 405-12, 391-92.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his March 22, 2000 written decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 1987. (A.R. 411.) The ALJ found that Plaintiff met the disability insured status requirements of the Social Security Act on December 31, 1987, and continued to meet such requirements through September 30, 1989, but not thereafter. (*Id*.) The ALJ found that Plaintiff was a "younger person," pursuant to 20 C.F.R. §§ 404.1563 and 416.963, and had completed high school and attended junior college, pursuant to 20 C.F.R. §§ 404.1564 and 416.964. (*Id*.) Plaintiff's testimony regarding his impairments was found to be not credible by the ALJ "[f]or the reasons discussed in the body of the decision." (*Id*.) The ALJ concluded that Plaintiff had "severe" impairments, but that Plaintiff did not have an impairment or combination of impairments listed in, or medically

3

equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4. (*Id.*)

The ALJ found that Plaintiff had the following residual functional capacity during the claimed period of disability:

> [Plaintiff] can occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds; can sit up to six hours out of an eight-hour day; and can stand and/or walk up to six hours out of an eight-hour day, but is unable to perform frequent bending or stooping.[1]

(*Id.*)

The ALJ found that Plaintiff was able to perform his past relevant work as an insurance salesman during the time period at issue. (*Id.*) The ALJ further found that, "even if [Plaintiff was not] capable of performing his past relevant work, Section 404.1569 of Regulations No. 4, section 416.969 No. 16, and Rule 202.21 of the Medical-Vocational Guidelines at Appendix 2, Subpart P, Regulations No. 4, provide guidance in concluding that considering [Plaintiff's] residual functional capacity, age, education, and work experience, he is not disabled."[2] (A.R. 412.)   Accordingly, the ALJ concluded that Plaintiff was not

---

[1]   "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[2]   Under Rule 202.21, a person who is a "younger" individual, a "high school graduate," "skilled or semi-skilled," but with no "transferable" skills, is not disabled. 20 C.F.R. Pt. 220, App. 2.

4

disabled within the meaning of the Social Security Act.  (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  <u>Desrosiers v. Sec'y. of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence.  *Id.* at 1041; *see also* <u>Morgan v. Commissioner of the Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Here, Plaintiff alleges eight issues. <u>First</u>, Plaintiff contends that the "ALJ's rationale violates the 'Cotton test.'" <u>Second</u>, Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting his testimony, as well as the testimony of his wife and his brother. <u>Third</u>, Plaintiff contends that the opinion of Dr. Almquist, the medical expert upon whom the ALJ partly relied in assessing his residual functional capacity, is not supported by substantial evidence. <u>Fourth</u>, Plaintiff generally contends that the ALJ's residual functional capacity finding is not supported by substantial evidence for other reasons. <u>Fifth</u>, Plaintiff contends that the ALJ failed to include all of Plaintiff's impairments in the hypothetical question posed to the vocational expert. <u>Sixth</u>, Plaintiff contends that the ALJ's finding that Plaintiff did not meet or equal a listed impairment constitutes error. <u>Seventh</u> and <u>eighth</u>, Plaintiff contends that the ALJ improperly found that Plaintiff's headaches and depression were not "severe," which "results in manifest injustice under the Commissioner's regulations." (Joint Stip. at 15-16.)

In the 1999 Order, the Court remanded the case on one ground only, relating to the ALJ's finding regarding Plaintiff's allegations of debilitating pain. In explaining its instructions to the ALJ on remand, the Court specifically stated:

Plaintiff has complained of severe and constant lower back pain, pain and numbness in his left leg, arthritic pain in his shoulders and neck, an ulcer, chest pain, and migraine

6

headaches and, therefore, has opined that he is unable to work.

. . . .

During his questioning of Dr. Glen Almquist, the ALJ aptly remarked, "And it becomes a credibility finding, doesn't it, basically as far as the pain – symptoms?" (A.R. 77.) Thus, the ALJ recognized that, in this case, the credibility of [P]laintiff's subjective complaints of debilitating pain would be the critical factor in evaluating the extent of [P]laintiff's disability. Notwithstanding this, the ALJ's written decision neither finds [P]laintiff's subjective complaints of pain to be lacking in credibility nor provides the requisite clear and convincing reasons necessary to support rejection of [P]laintiff's claims of debilitating pain. Rather, the ALJ simply skirts the required credibility determination . . . . These findings regarding [P]laintiff's ability to work, notwithstanding his pain, are at striking odds with [P]laintiff's testimony, which presents a picture of utterly debilitating pain and was corroborated, in significant part, by his wife's testimony (see A.R. 27-31), which the ALJ failed to discuss. Further, the ALJ's findings are not sufficiently specific to allow this Court to determine whether the ALJ and the Commissioner tacitly discounted or rejected [P]laintiff's testimony on permissible grounds founded upon the testimony in the record. Bunnell, 947 F.2d at 345. Indeed, the ALJ's broad and general statements do not

7

thoroughly discuss or analyze the evidence nor do they
logically explain the conclusion reached.

    In the instant case, it may very well be that
[P]laintiff's subjective complaints are inconsistent with the
objective medical evidence. However, as a matter of law,
[P]laintiff is entitled to a thorough discussion and analysis
of the evidence and a detailed explanation of the conclusions
reached. The ALJ must address the particular subjective
complaints, the particular objective findings, and provide a
logical explanation of the nature of the inconsistencies. <u>Id.</u>
Therefore, on remand, the ALJ must make specific findings
regarding his reasons for rejecting [P]laintiff's allegations
of debilitating pain.

(A.R. 549-50.) *See also* <u>Cequerra v. Secretary</u>, 933 F.2d 735, 738 (9th
Cir. 1991)(When an ALJ's decision rests on a negative credibility
evaluation, "the ALJ must make findings on the record and must support
those findings by pointing to substantial evidence on the record.").

**A.   <u>The ALJ Properly Rejected Testimony Provided By Plaintiff, His
      Wife, And His Brother</u>.**

    The Court will give great weight to the ALJ's credibility
assessment. <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990);
<u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that
the ALJ's credibility determination is to be given great weight when
supported specifically). In determining whether a claimant's testimony

8

regarding the severity of his symptoms is credible, the ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

Although an ALJ must consider lay testimony as to a claimant's symptoms (Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)), an ALJ may "properly discount lay testimony that conflict[s] with the available medical evidence" (Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)), particularly, where, as in Vincent, "lay witnesses [are] making medical *diagnoses*," as "[s]uch medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)(original emphasis). However, lay witness testimony about a claimant's *symptoms*, which may affect the claimant's ability to work, *is* competent evidence and therefore *cannot* be disregarded without comment. *Id*.

Following remand and a further hearing in this case, the ALJ discussed the testimony of Plaintiff in his March 22, 2000 decision, as follows:

    I have thoroughly considered [Plaintiff's] subjective
    complaints as mandated by the District Court and find them all

9

grossly exaggerated and incredible.  [Plaintiff] testified that he experiences constant pain in the lower back and migraine headaches occurring approximately three times per week.  He asserted that he spends virtually the entire day lying down, generally only gets up to eat meals lasting 10 to 15 minutes, and stays in his pajamas all day.  [Plaintiff] also allegedly cannot take a shower unless his wife stands next to him and holds him up in the shower, requires his wife to put on his clothes since he is unable to dress himself, and must be wiped by his wife when he goes to the bathroom.

Such testimony is so extreme and self-serving as to defy all logic and reason.  First, [Plaintiff] does not exhibit the stigmata which typically results from total inactivity such as muscle wasting and diminished motor function in the lower extremities.  Moreover, his medical treatment has been limited to occasional routine visits to a general practioner.  This is hardly the course of action expected of an individual who has been totally incapacitated by continuous debilitating pain.  Furthermore, an individual who cannot stand on his own for the brief period of time necessary to take a shower would be expected to routinely [use] a wheelchair or walker.  However, [Plaintiff] does not use any such assistive device.

A complete lack of credibility is also evidenced by [Plaintiff's] currently alleged inability to speak fluently in English.  At the supplemental hearing, [Plaintiff] used an interpreter and told the Administrative Law Judge that he was

10

only able to understand a few of the questions asked without aide of the interpreter. This sharply contrasts with [Plaintiff's] ability to understand and respond without difficulty to questions asked in English at the prior hearing without an interpreter. Additionally, Dr. Shamie examined [Plaintiff] at the behest of his attorney in February 1997 and noted that he "speaks fluent English with a slight accent" (Exhibit 72, p.5).

(A.R. 409-10.)

In rejecting the testimony of Plaintiff's brother and his wife, the ALJ stated:

I have considered the testimony of [Plaintiff's] older brother, Issa Rabadi, at the supplemental hearing. The witness testified that his brother appears to be in significant pain and is generally observed lying down on the floor of his bedroom. However, the testimony appears to be based on a filial acceptance of [Plaintiff's] complaints and may well be colored by personal relationship and desire to see his brother achieve financial gain. Consequently, the testimony does not warrant any change in my decision.

I have also reviewed the testimony at the prior hearing of [Plaintiff's] wife, Alva Rabadi. While Mrs. Rabadi stated that she helps her husband shower and dress, the testimony is not credible for the reasons stated with regard to

11

1           [Plaintiff's] similar assertions.  Mrs. Rabadi's relationship

2           with her husband and her obvious financial stake in the

3           outcome of the case are motivational factors which could

4           readily influence her testimony.  The wife's testimony is

5           therefore not worthy of significant probative weight in the

6           circumstances of this case.

7

8 (A.R. 410.)

9

10     Here, the ALJ adequately supported his conclusion that Plaintiff

11 was exaggerating his symptoms and that his testimony as to his pain and

12 functional limitations was not credible.  Benton v. Barnhart, 331 F.3d

13 1030, 1040 (9th Cir. 2003)(ALJ may reject a claimant's testimony upon:

14 "(1) finding evidence of malingering, or (2) expressing clear and

15 convincing reasons for doing so").  Indeed, Plaintiff's claimed

16 inability to communicate in English and need for a translator at the

17 1999 hearing, although he had testified at the 1995 hearing without a

18 translator, is an indicator that Plaintiff was not being truthful in his

19 testimony.  Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989)("i]f a

20 claimant has a reputation as a liar, or has made prior statements

21 inconsistent with his claim of pain, or is found to have been less than

22 candid in other aspects of his testimony, that may be properly taken

23 into account in determining whether or not his claim of disabling pain

24 should be believed.").

25

26     Furthermore, the ALJ adequately cited how Plaintiff's complaints of

27 disabling pain -- which he claimed to incapacitate him totally -- were

28 at odds with his treatment and the lack of objective findings of severe

incapacitation, such as muscle atrophy or wasting.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)(affirming the ALJ's rejection of the claimant's testimony of constant pain that required her to lie in a fetal position all day where the ALJ noted that the claimant did not exhibit muscular atrophy or any other physical signs of an inactive, totally incapacitated individual).

Similarly, the ALJ's rejection of the testimony of Plaintiff's wife and brother on these grounds, in addition to on the bases of their personal relationships with Plaintiff and their desire to see him obtain financial gain, was founded on sufficiently specific and germane reasons.  *See, e.g.,* Vincent, 739 F.2d at 1395 (ALJ may discount lay witness testimony that conflicts with the medical evidence); Strauss v. Apfel, 45 F. Supp. 2d 1043, 1049 (D. Or. 1999)(affirming the ALJ's rejection of testimony provided by the claimant's mother, because it conflicted with the medical testimony and other evidence).

Accordingly, the Court does not disturb the credibility findings made by the ALJ in accordance with the 1999 Order.

**B.** **Plaintiff's Remaining Alleged Errors Do Not Provide Any Basis For Reversing The ALJ's Decision.**

**1.** **Plaintiff's Arguments Regarding Errors That Already Were Alleged Or Could Have Been Alleged In The Prior Proceeding Before This Court**

Plaintiff alleges numerous errors in the ALJ's decision on remand.

13

Because Plaintiff either already has alleged, or could have alleged, such errors in his prior action, his attempt to secure a reversal of the ALJ's decision based on such grounds is improper.

Errors that were already alleged and addressed cannot be re-litigated at this juncture.[3] Under the "law of the case" doctrine, "'the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.'" Pearson v. Chater, 1997 WL 314380, *3 (N.D. Cal. Feb. 20, 1997)(quoting Herrington v. County of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993)). "'Although the observance of the doctrine is considered discretionary, [the Ninth Circuit] has ruled that the prior decision should be followed unless:  1) the decision is clearly erroneous and its enforcement would work a manifest injustice, 2) intervening controlling authority makes reconsideration appropriate, or 3) substantially different evidence was adduced at a subsequent trial.'" Pearson, 1997 WL 314380, *3 (quoting In re Rainbow Magazine, Inc., 77 F.3d 278, 281 (9th Cir. 1996)); see also Mendenhall v. National Trans. Safety Bd., 213 F.3d 464, 469 (9th Cir. 2000). See also Samuels, B., SOCIAL SECURITY DISABILITY CLAIMS: PRACTICE AND PROCEDURE, § 19:78 (2d ed. 1994, updated as of 2006)(the law of the case doctrine directs that "the Commissioner is bound on remand from a Federal Court by the scope of the court's mandate.  Thus, law of the case doctrine prevents relitigation of settled issues in a case and requires courts and administrative agencies to adhere to decisions made in earlier proceedings"; citations

---

[3]     In any event, aside from Plaintiff's claimed errors with respect to the ALJ's credibility finding addressed above, the remaining errors he alleges (e.g., errors arising from the ALJ's improper residual functional capacity finding and errors considering his claimed mental impairment) are addressed in Section 2, infra.

14

omitted).    The  Court  finds  that  none  of  the  three  above-mentioned

factors  are  present  here,  and  the  law  of  the  case  doctrine  should  be

applied.[4]

Errors  that  could  have  been  raised,  but  were  not,  are  now

foreclosed  from  consideration.    *See*  Cochran v. Chater, 16 F. Supp. 2d

248,    251    (W.D.N.Y.    1997)(citing    Paterson-Leitch  Co.  Inc.  v.

Massachusetts Municipal Wholesale Elec. Co., 840 F.2d 985 (1st Cir.

1988))("The  District  Court  on  *de novo*  review  will  ordinarily  refuse  to

consider  arguments,  case  law  and/or  evidentiary  material  which  could

have  been,  but  was  not,  presented  to  the  Magistrate  Judge  in  the  first

instance."); *see also* Yeti Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d

1101, 1108 (9th Cir. 2001)(party  waived  its  right  to  argue  issues  which

were  not  raised  in  the  first  instance  in  the  proceeding  before  the

district court); Doi v. Halekulani Corp., 276 F.3d 1131, 1140 (9th Cir.

2002)(litigant  fails  to  preserve  an  issue  for  the  purposes  of  an  appeal

where  he  did  not  raise  it  at  the  proper  initial  hearing  level).

As  set  forth  above,  the  1999  Order  remanded  the  case  for  further

proceedings  regarding  the  consideration  of  Plaintiff's  credibility.    In

addressing  the  scope  of  issues  to  be  addressed  by  an  ALJ  pursuant  to  a

---

[4]    Thus,  to  the  extent  that  Plaintiff  contends  that  the  ALJ
failed  to  reopen  his  prior  applications  and  that  *res judicata* should  not
apply  (Joint  Stip.  at  47-49),  the  Court  previously  decided  those  issues
in  the  1999  Order.    (A.R.  544-46.)    These  findings  are  law  of  the  case,
and  there  are  no  grounds  to  reconsider  them.    Merritt v. Mackey, 932
F.2d 1317, 1320 (citations omitted)(9th Cir. 1991)("[t]he  prior  decision
of  legal  issues  should  be  followed  on  a  later  appeal  'unless  the
evidence  on  a  subsequent  trial  was  substantially  different,  controlling
authority  has  since  made  a  contrary  decision  of  the  law  applicable  to
such  issues,  or  the  decision  was  clearly  erroneous  and  would  work  a
manifest  injustice.'").

district court's order remanding the case, the United States Supreme Court explained:

> Where a court finds that the Secretary has committed a legal or factual error in evaluating a particular claim, the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed. *See, e.g.*, *Cooper v. Bowen*, 815 F.2d 557, 561 (C.A. 9, 1987). Often, complex legal issues are involved, including classification of the claimant's alleged disability or his or her prior work experience within the Secretary's guidelines or "grids" used for determining claimant disability. *See, e.g.*, *Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 772-73 (C.A. 6, 1987). Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review. *See, e.g., Hooper v. Heckler*, 752 F.2d 83, 88, 758-59 (C.A. 6, 1967).

Sullivan v. Hudson, 490 U.S. 877, 885, 109 S. Ct. 2248, 2254 (1989).

Here, the ALJ complied with the 1999 Order on remand.  Plaintiff's arguments that the ALJ failed to consider properly other issues that either were alleged or could have been alleged in the prior proceeding are, therefore, unavailing.

16

## 2. __Plaintiff's Arguments Based On "New" Evidence__

To the extent that Plaintiff argues that medical evidence was added to the record after the 1995 administrative hearing that rendered the ALJ's findings in error and required the ALJ to secure a further opinion from a medical expert under Social Security Ruling 96-6p, his argument is similarly unpersuasive. (Joint Stip. at 43, citing A.R. 582-626.) Social Security Ruling 96-6p requires an updated medical expert opinion when there is a new "medical opinion," which is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite his or her impairment(s), and the individual's physical or mental restriction." 1996 WL 374180 (July 2, 1996).

In this case, the only "new" evidence to which Plaintiff refers that actually post-dates the 1995 hearing consists of: Dr. Mohammed Ibrahim's October 8, 1999 Physical Capacities Evaluation that limits Plaintiff to lifting up to five pounds frequently and up to 20 pounds occasionally, carrying up to ten pounds frequently and up to 20 pounds occasionally, and sets forth further postural and non-postural limitations (A.R. 582); a July 8, 1996 x-ray of the cervical spine, showing straightening in the normal cervical lordosis (A.R. 599); Dr. Ibrahim's August 18, 1999 letter, stating that Plaintiff "is incapable of working at a sustained pace [and] incapable of competing for jobs in today's market" (A.R. 620); a March 4, 1998 evaluation from Dr. Samuel Dey, stating that Plaintiff suffers from major depression and assessing

17

him with a current Global Assessment of Functioning score ("GAF") of 50 and a GAF in the past year of 75 (A.R. 622-23); a February 26, 1997 report from Dr. M.A. Shamie, a psychiatrist, noting that Plaintiff suffers from major depression, recurrent and rule out reactive depression, and had a GAF of 56 (A.R. 624-26); a Medical Report completed by a physician whose identity is unclear, diagnosing Plaintiff with degenerative joint disease of the spine and chronic back pain and opining that Plaintiff's "probable duration of incapacity" was "permanent" from June 19, 1997, to July 1, 1998 (A.R. 604); and handwritten notes (A.R. 600-03, 605-17).

Other evidence to which Plaintiff refers as "new" pre-dates the 1995 hearing and consists of:  a February 25, 1991 x-ray, showing straightening of the normal cervical lordotic curve and minimal osteoarthritis of the cervical articulations (A.R. 583); an August 28, 1991 x-ray of the dorsal spine, showing minimal degenerative changes involving the thoracic spine (A.R. 584); Dr. Ibrahim's January 28, 1993 statement, noting that Plaintiff was permanently disabled (A.R. 585); a May 24, 1993 Medical Report, indicating that Plaintiff suffered from neck and back pain and that Plaintiff's "probable duration of incapacity" was "temporary" from May 24, 1993, to October 1, 1993 (A.R. 589); a Medical Report completed by Dr. Ibrahim dated July 27, 1993, diagnosing Plaintiff with disk disease, possible angina, and arthritis and opining that Plaintiff's "probable duration of incapacity" was "permanent" from July 27, 1993, to August 1, 1994 (A.R. 591); and handwritten notes (A.R. 586-88, 590, 592-98).

In determining his residual functional capacity assessment, the ALJ

18

relied upon the opinions of Dr. Almquist, a medical expert who testified at the April 17, 1995 hearing, and Dr. Ibrahim Yashruti, an orthopedic surgeon who examined Plaintiff at the request of the Commissioner on July 1, 1999.  The opinions of other physicians -- examining physicians and non-examining, testifying medical experts -- may constitute substantial evidence upon which an ALJ may rely, when they are properly supported.  *See, e.g.,* <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); <u>Morgan</u>, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the records and are consistent with it").

Dr. Almquist found that Plaintiff had no impairments or functional limitations documented by the objective evidence (A.R. 60, 63, 76), but nevertheless limited Plaintiff to work at the "sedentary" level based on Plaintiff's subjective complaints (A.R. 75-76).  In reaching this conclusion, Dr. Almquist considered the medical record at the time of the 1995 hearing, which included objective findings based on CT scans and other radiological studies (A.R. 60-62).  In his July 1, 1999 report, Dr. Yashruti found that Plaintiff had the capacity to perform work at the "medium" level, and based his opinion upon a review of Plaintiff's treating records and objective testing, as well as his own physical examination.  (A.R. 557-64.)

Relying upon these doctors' findings and resolving the differences between them, the ALJ appropriately found that Plaintiff could perform work at the "light" level.  *See* <u>Batson v. Commissioner of the Social</u>

19

1  Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004)(when there are
2  conflicting medical opinions, the ALJ must resolve the conflict); Thomas
3  v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002)(same); Matney v.
4  Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)(same).  Based on that
5  residual functional capacity, the vocational expert testified that
6  Plaintiff could perform his past relevant work as an insurance salesman.
7  (A.R. 81, 456.)

8

9       Although Plaintiff contends that the ALJ erred by failing to
10 address and consider properly in his findings the additional objective
11 testing that Plaintiff submitted following the April 17, 1995 hearing
12 (such as an August 28, 1991 x-ray of the dorsal spine, showing minimal
13 degenerative changes involving the thoracic spine (A.R. 584), a February
14 25, 1991 x-ray, showing straightening of the normal cervical lordotic
15 curve and minimal osteoarthritis of the cervical articulations (A.R.
16 583), a July 8, 1996 x-ray of the cervical spine, showing straightening
17 in the normal cervical lordosis (A.R. 599)), Dr. Yashruti's report
18 states that he reviewed objective testing of Plaintiff's spine covering
19 the same time period as the additional objective evidence cited by
20 Plaintiff. (See A.R. 562-63 -- listing the records that Dr. Yashruti
21 reviewed, including August 29, 1996 x-rays of the lumbar spine and
22 pelvis; July 5, 1989 x-rays of the lumbar spine; November 15, 1989 x-
23 rays of the lumbar spine; December 11, 1991 CT scan of the thoracic
24 spine; August 28, 1991 x-rays of the dorsal spine; February 21, 1991 x-
25 rays of the cervical spine.)  The ALJ's statement that any "new"
26 evidence did not warrant any change in his residual functional capacity
27 finding is, therefore, well-founded.  (A.R. 407.)

28

With respect to Dr. Ibrahim's functional assessments that Plaintiff was incapable of full-time work, the ALJ initially considered and rightly rejected them in his December 25, 1995 written decision as "simply not supported by the objective findings, including his own cursory treatment notes." (A.R. 20; *see also* A.R. 69 -- Dr. Almquist's statement that Dr. Ibrahim's functional capacity reports were not supported by any objective basis.)   In his March 22, 2000 written decision, the ALJ noted that Dr. Ibrahim had submitted an additional functional capacity assessment again indicating that Plaintiff could not work.   In rejecting this additional assessment, the ALJ appropriately reiterated his rationale for rejecting "[s]imilar assertions" of Dr. Ibrahim in his prior decision, and found that such additional assessments "are contrary to the mild objective findings and unsupported by Dr. Ibrahim's own cursory treatment notes." (A.R. 408.) *See* Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001)(ALJ provided specific and legitimate reasons for rejecting a treating doctor's opinion, as that opinion was internally inconsistent); *see also* Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986)(treating doctor's conclusory opinion that claimant was disabled was properly rejected by the ALJ when it was internally inconsistent and not consistent with doctor's prior medical reports).

Thus, because the "new" evidence pertaining to Plaintiff's physical impairments (which almost all appears to be records from Dr. Ibrahim) is essentially cumulative of the evidence submitted prior to the 1995, there is no need to seek a further medical expert opinion. *See* Booz v. Secretary of Health and Hum. Serv., 734 F.2d 1378, 1380 (9th Cir. 1983)(citing Dorsey v. Heckler, 702 F.2d 597, 604-05 (5th Cir.

21

1983)(emphasis in original)(new evidence requires remand for
consideration when "there is *reasonable possibility* that the new
evidence would have changed the outcome of the Secretary's determination
had it been before him"). Furthermore, as this additional evidence did
not negate the validity of the ALJ's residual functional capacity prior
and require an additional medical opinion, the ALJ's properly relied
upon the vocational expert's testimony that Plaintiff could perform his
past relevant work. (A.R. 81 -- vocational expert's testimony at the
1995 hearing that Plaintiff could perform his past relevant work as an
insurance sales agent with a residual functional capacity limiting him
to "light" work).

With respect to Plaintiff's arguments pertaining to his claimed
mental impairment, the ALJ addressed the evidence from Dr. Dey, Dr. Don,
and Dr. Shamie regarding Plaintiff's alleged depression in his March 22,
2000 written decision. However, the ALJ rejected Plaintiff's claims of
disabling depression, stating: "the brevity of [Plaintiff's]
psychiatric treatment and benign nature of the mental examination
findings warrant the conclusion that [Plaintiff] does not have a severe
mental impairment."[5]   (A.R. 409.)   Critically, the ALJ noted that

_____

[5]    Furthermore, to the extent Plaintiff contends that the ALJ's
decision is erroneous, because he failed to address GAF scores which
allegedly indicate disabling mental limitations, that argument is
unpersuasive. A GAF score is not determinative of a mental disability
for social security claim purposes. *See* Revised Medical Criteria for
Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg.
50746-01 (August 21, 2000)("We did not mention the GAF scale to endorse
its use in the Social Security and SSI disability programs. . . . [The
GAF scale] does not have a direct correlation to the severity
requirements in our mental disorder listings"); Howard v. Commissioner,
276 F.3d 235, 241 (6th Cir. 2002)(rejecting the claimant's argument that
the ALJ improperly failed to consider her GAF score from her treating
physicians in assessing her residual functional capacity, reasoning that
"[w]hile a GAF score may be of considerable help to the ALJ in

22

Plaintiff did not allege a mental impairment until well after his prior adverse 1995 decision. (*Id*.)  If Plaintiff wished to allege depression as a basis for his disability, he should have raised such claims at or before the 1995 hearing, not at the 1999 hearing at which the ALJ was directed to address specifically the credibility issue in accordance with the 1999 Order. *See* <u>Meanel</u>, 172 F.3d at 1115 (claimants must raise issues at their administrative hearings in order to preserve them on appeal to a district court).  Accordingly, the ALJ's decision may not be reversed based on the manner in which he addressed this mental health issue, which was not raised at Plaintiff's 1995 administrative hearing and, therefore, was not preserved on appeal to this Court.[6]

## CONCLUSION

Accordingly, for the reasons stated above, the Commissioner's decision denying benefits is AFFIRMED, consistent with this Memorandum Opinion and Order.  Judgment shall be entered affirming the decision of the Commissioner, consistent with this Memorandum Opinion and Order.

///
///
///
///
///
///

formulating the RFC, it is not essential to the RFC's accuracy.").

[6]    Of course, to the extent that Plaintiff contended he became impaired following the 1995 administrative hearing due to a mental health impairment, he could have filed a new disability claim on that basis.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 29, 2006

                              /s/
                    ────────────────────────────
                         MARGARET A. NAGLE
                    UNITED STATES MAGISTRATE JUDGE

24